IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 20, 2016

**ALONZA GRACE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 291349      Rebecca J. Stern, Judge**

_____

**No. E2015-01392-CCA-R3-PC – Filed April 28, 2016**

_____

The petitioner, Alonza Grace, appeals from the denial of post-conviction relief, arguing that his guilty plea was not knowingly, voluntarily, and intelligently entered because he was under the influence of prescription medication. He further contends that trial counsel was ineffective in failing to request a forensic evaluation to determine his competency and in failing to investigate alleged missing evidence. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Brandy Lachell Spurgin, Chattanooga, Tennessee, for the Defendant-Appellant, Alonza Grace.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; M. Neal Pinkston, District Attorney General; and Brian S. Finlay, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On April 9, 2009, the petitioner was indicted on two counts of especially aggravated robbery, two counts of aggravated assault, one count of attempted first degree murder, one count of first degree murder, and one count of first degree felony murder.[1] After a jury was unable to reach a verdict at trial, the petitioner agreed to plead guilty to the reduced offense of second degree murder in exchange for the dismissal of the

---

[1] The indictments and judgment forms are not included in the record on appeal. We deduce this information from the petitioner's filings and the guilty plea hearing.

remaining charges and a fifteen-year sentence. In this case, we are without the benefit of an underlying factual basis supporting the petitioner's guilty plea because the trial court, after presiding over the jury trial, found it to be unnecessary. Our understanding of the facts supporting the guilty plea is further impeded because there is no transcript of the jury trial included in the record on appeal. In any event, at the April 24, 2013 guilty plea hearing, the trial court advised the petitioner and his co-defendant of their rights and the rights they would forfeit by entering the guilty plea. When the trial court asked whether the petitioner understood the terms of the plea agreement, the petitioner asked whether he would receive credit for time served in the county jail. The trial court assured the petitioner that he would receive credit "for any time you've been in custody on this case[.]" The petitioner acknowledged that he was entering the guilty plea freely and voluntarily and that he was not under the influence of drugs, alcohol, or medication that might affect this decision. When the trial court asked the petitioner if he was satisfied with this attorney, he responded "Yeah."

Upon finding that the petitioner's guilty plea was knowing and voluntary, the trial court accepted the plea and sentenced the petitioner in accordance with the plea agreement to fifteen years. On April 8, 2014, the Petitioner filed a pro se petition for post-conviction relief alleging, inter alia, that his guilty plea was involuntary and unknowingly entered and that he received ineffective assistance of counsel. He was subsequently appointed counsel, who filed an amended petition on August 13, 2014.[2]

**Post-Conviction Hearing.** At the March 4, 2015 post-conviction hearing, the petitioner testified that, about a month after his trial, he was appointed new counsel, who represented him throughout plea negotiations and at the time of his guilty plea. The petitioner felt "forced and coerced" to "cop out" to second degree murder because he wanted to plead guilty to negligent homicide. He believed the case against him was "weak" based on "lost evidence" he discovered after his trial. He was unable to identify this evidence at the post-conviction hearing and agreed that everything he knew about it stemmed from an article that was posted on the internet on February 23, 2012. He summarized the article as follows:

> [It was] entitled U.S. judge called U.S. attorney on the carpet for handling a case involving murder of rapper. On page two of this article it says that Attorney Hendrix said he was also (Unintelligible) about a fact that certain evidence in the case had been lost. Prosecutor Wood said FBI task force officer Matt Hennessy went to California to interview Jonathan Jackson who was tied up in duct tape and shot but survived at the time of the slaying of the rapper. He said Agent Hennessy showed a photo lineup

---

[2] By order of this court, the petitioner's late filed notice of appeal was waived in the interest of justice.

to Jackson and also made a report of the California trip. The prosecutor said that evidence was turned over to the Chattanooga Police Department and had disappeared.

The petitioner discussed the "missing evidence" with his attorney, who advised him that the evidence was inadmissible.

At the time of his guilty plea, the petitioner was "schizophrenic, bipolar" and taking a daily medicinal regimen of "HTZ 50 milligrams[,] Zoloft 50 milligrams[,] Zantac 150 milligrams[,] Clonidine .3 milligrams[,] Celexa 20 milligrams [,] Neurontin 600 milligrams twice a day, and Saphris 20 milligrams[.]" He later explained that he was on a higher dose of Saphris, which was for schizophrenia, at the time of his guilty plea. As a result of taking his medication, he experienced paranoia, tiredness, incoherence, dizziness, and sleepiness. He felt "confused" and "paranoid" and "kind of delusional" at the time he entered his guilty plea and acted only "under the instructions of [his] attorney," who told him to say "yes" to everything. He did not know why he failed to disclose that he was on medication during his guilty plea and later clarified that he thought the trial court was referring to "illegal" drugs, not prescription medication. He acknowledged taking his medication when he testified at his trial and conceded that neither trial counsel nor his post-trial counsel raised an insanity defense or any concerns regarding his competency. Finally, the petitioner believed he needed a "forensic" evaluation and requested such from counsel. He disagreed with counsel's assessment that it was unnecessary and counsel's refusal to request it from the court.

Counsel, a criminal defense attorney for thirty years, was appointed to the petitioner's case after his jury trial. In one of their first meetings, the petitioner indicated his desire to enter a guilty plea, which counsel found to be "unusual." She recalled the petitioner wanted to plead guilty because he had been in custody a long time. Counsel noted, "until the very end when [the petitioner pled], it was [the petitioner] that was making plea offers. Not the State." He initially proposed a guilty plea to criminally negligent homicide in exchange for a six-year sentence, which was flatly rejected by the State. Counsel explained the evidence against the petitioner included the petitioner's testimony that he was at the scene of the offense and the fact that the surviving victim identified the petitioner. Although the State believed that more individuals were involved with this offense, it was unwilling to reduce the petitioner's sentence in exchange for his testimony against them because the petitioner provided "untruthful" testimony at trial. At the petitioner's request, counsel proposed subsequent offers of ten and twelve years, both of which were rejected by the State. Counsel said that the petitioner did not want to accept anything more than twelve years and that the State was only willing to offer a minimum of fifteen years with eighty-five percent service.

For months prior to entry of his guilty plea, counsel discussed plea options with the petitioner. They reviewed the petitioner's rights, the conditions of the plea, and his sentencing exposure prior to entry of his guilty plea. On the morning of the plea, counsel was unsure whether the petitioner was going to accept the State's offer. She noted,

> [W]e were to the point that if he did not take the State's -- that was their bottom line offer was 15 years. They wouldn't come any lower than that. It took a while to get them down to that. And it was a situation in which if he didn't want to accept that then we were going to go ahead and set the case for trial and proceed that way. And so I wasn't sure that morning if he was ultimately going to go through with the plea or not.

Counsel knew that the petitioner was taking psychotropic medication at the time of his plea, but believed "there was not any question . . . that he understood what he was doing." Although she did not know the exact dosages of the medication that the petitioner was prescribed, the petitioner "was not any different that day from how he was any of the other times she had seen him." She denied telling the petitioner to say "yes" to everything.

Counsel said that the petitioner never requested a forensic evaluation. She knew that the petitioner was on medication, but she never questioned his competency because he was "bright" and "understood everything going on in his case." In regard to this issue, counsel explained:

> [Y]ou know, [the petitioner] had testified that he was present at the scene of the homicide, and his version was that he was coming to buy drugs and that he just happened on this robbery scenario in which [the victim] was killed. And that [the petitioner] was shot in the process. But there was not -- it wasn't a case in which there was ever going to be an insanity defense. And as I said, [the petitioner's] competency in my mind was never at issue because he was very knowledg[e]able about his case and about what he wanted done on his case.
>
> . . . .
>
> [The petitioner] never in any way appeared to me to be incompetent. He always seemed to me very much aware of what was going on in his case, and what was in his best interest and what wasn't in his best interest. And he asked a lot of very involved, complicated legal questions that indicated clearly an understanding of the process. And there was -- I mean, I've been

-4-

doing this for a long time. There have been plenty of defendants I've represented who I didn't think were competent or that I had a question about their competency and I asked for a forensic evaluation. But that was never the situation with [the Petitioner].

Counsel also testified regarding the missing evidence referred to by the petitioner. Apparently, one of the suspects involved in this case was also involved in an unrelated federal case. There was a news media article noting that "the State or Federal government had dropped the ball in prosecuting" the other suspect. Counsel investigated the claim and explained to the petitioner that "there wasn't anything . . . that would make a difference to him." The petitioner remained concerned that the missing evidence related to the other suspect's federal investigation would have been beneficial to his case. Co-defendant's counsel later confirmed that there was no information from the federal investigation that could be used in the petitioner's case.

Officer Karl Fields, of the Chattanooga Police Department and lead investigator in the petitioner's case, recalled that a couple of months before the petitioner's trial, Federal Bureau of Investigation Agent Matt Hennessey went to California to interview the surviving victim. However, he did not know about any media report stating that Agent Hennessey had turned over evidence to the Chattanooga Police Department. Officer Fields was unaware of any missing evidence in the petitioner's case. Officer Fields further stated that he had never testified in federal court. He said that he had worked several gang-related offenses, although none of them involved undercover work.

Janice Thomas, the petitioner's older sister, testified that she had been present for all of the petitioner's court proceedings and visited the petitioner in jail once or twice a week. She testified that the petitioner was diabetic, had high blood pressure, and sometimes suffered from paranoid tendencies. The petitioner had been ill the week before his plea hearing and was taken to the jail infirmary, where he was given intravenous treatment for dehydration and put on medication for diabetes and high blood pressure. She observed that the petitioner "didn't seem like himself" at the time of his guilty plea. The petitioner had previously told his sister that he wanted to go to trial, but he was still "back and forth" on the weekend before his plea. When she spoke to the petitioner about his decision to plead guilty, she said that he maintained that he wanted a trial "but not the way he had before." She did not know what medications the petitioner was on at the time of his plea. Although she had never seen her brother have a paranoid episode, she knew he was not acting normally on the day of his plea. She agreed that her brother was "wavering" on his decision even after the plea was entered.

At the conclusion of the hearing, the post-conviction court took the matter under advisement, and issued a written order dismissing the petitioner's post-conviction petition

on June 16, 2015. A notice of appeal was filed on July 27, 2015, the untimely nature of which was waived in the interest of justice by order of this court on July 31, 2015.

## ANALYSIS

On appeal, the petitioner argues that his guilty plea was not entered knowingly and voluntarily and that he received ineffective assistance of counsel. The State responds that the petitioner's guilty plea was entered knowingly, intelligently, and voluntarily. The State further argues that the petitioner failed to establish that counsel's performance was deficient or that the Petitioner was prejudiced as a result of any deficiency. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

**I. Guilty Plea.** First, the petitioner asserts that his guilty plea was involuntary and unknowing, because he "was heavily medicated and did not understand the plea and was following the instruction of his trial counsel." The petitioner alleges that he was suffering side effects from his prescribed medications at the time he entered his plea.

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553

S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009)). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

In denying relief on this issue, the post-conviction court determined that, although the petitioner was on medication at the time of his plea, there was no evidence suggesting "his medications . . . ha[d] a decision-affecting potential." The court noted that the petitioner denied being under the influence of any drugs, alcohol, or medication that might potentially affect his decision-making ability at the time he entered his guilty plea. The court also reasoned that "the [p]etitioner's conditional affirmation of the summary of the plea agreement, subject to his entitlement to jail credit, reflects alertness, memory, and precision, not confusion." The court accredited trial counsel's testimony and determined that the petitioner was advised of his sentencing exposure and that he was competent at the time he entered his guilty plea. Nothing in the record suggests that the petitioner was unable to render an intelligible decision regarding his guilty plea based on his prescription medication. To the contrary, the record shows that the petitioner was

intelligent, familiar with criminal proceedings, conferred with counsel numerous times about alternatives to the guilty plea, and could have received a significantly greater penalty had he proceeded to trial. See Sheila Marie Lott v. State, No. M2010-02637-CCA-R3-PC, 2012 WL 11180, (Tenn. Crim. App. Jan. 4, 2012) (rejecting claim that guilty plea was involuntary and unknowing based on prescription medication). Accordingly, we agree with the post-conviction court and conclude that the petitioner has failed to prove by clear and convincing evidence that his guilty plea was involuntary and unknowing. The petitioner is not entitled to relief on this issue.

**II. Ineffective Assistance of Counsel.** The petitioner argues that counsel provided ineffective assistance because she knew he was on psychotropic medication and failed to request a forensic evaluation of his competency before entry of his plea. He further contends that counsel failed to fully investigate the missing evidence in his case and that, but for this failure, he would have proceeded to trial.

In Vaughn, our supreme court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated

once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

First, the petitioner argues that counsel failed to request a forensic evaluation of his competency despite being aware that he was on psychotropic medication. He emphasizes that both he and his sister testified that he was not acting like himself on the day of his plea. In denying relief, the post-conviction court noted that the insanity defense was not applicable under the circumstances and that neither the petitioner's trial testimony nor his post-trial conduct suggested that he was incompetent. Furthermore, the court accredited the testimony of counsel, who testified that the petitioner had not previously raised an insanity defense and never requested a forensic evaluation. Counsel also testified that the petitioner proposed three different plea offers and demonstrated a thorough understanding of the evidence, law, and surrounding circumstances of his case. The record does not preponderate against the findings of the post-conviction court. Accordingly, the petitioner is not entitled to relief on this issue.

Next, the petitioner contends that counsel failed to adequately investigate the missing evidence referenced in the February 2013 media article. He maintains that, but for this failure, he would have continued to a jury trial. The post-conviction court rejected this contention, noting that counsel presented the petitioner's proposed plea offers to the State and negotiated an outcome that was favorable to the Petitioner in light of the sentencing exposure he faced at trial. The post-conviction court also found that the "missing evidence" was inconsequential to the petitioner's case because, here, the petitioner's own testimony placed him at the crime scene and the surviving witness had already identified him. Moreover, counsel testified that both she and counsel for the petitioner's co-defendant investigated the missing evidence but ultimately found that it was unrelated to the present matter. Because the "missing evidence" was not introduced or explained at the post-conviction hearing, we are unable to determine the impact it would have had on the petitioner's case. Accordingly, the petitioner is not entitled to relief on this issue.

-9-

## CONCLUSION

Upon our review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE